Anoush Hakimi (State Bar No. 228858)
*anoush@handslawgroup.com*
Peter Shahriari (State Bar No. 237074)
*peter@handslawgroup.com*
**THE LAW OFFICE OF HAKIMI & SHAHRIARI**
1800 Vine Street
Los Angeles, CA 90028
Telephone: (888) 635-2250
Facsimile: (213) 402-2170

Attorneys for Plaintiff,
**JAMES SHAYLER**

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| James Shayler,<br><br>        Plaintiff,<br>    v.<br><br>S & E 786 Enterprise, LLC, a California Limited Liability Company; and Does 1-10,<br><br>        Defendants. | Case No.: 2:20-cv-06383-SVW-PVC<br><br>Hon. Stephen V. Wilson<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**<br><br>Date:  January 4, 2021<br>Time:  1:30 p.m.<br>Courtroom:  10A |

1

# <u>TABLE OF CONTENTS</u>

I.    PRELIMINARY STATEMENT ...................................................................7

II.   RELEVANT FACTS...........................................................................9

III.  LEGAL STANDARD FOR SUMMARY JUDGMENT .........................13

IV.   PLAINTIFF HAS ESTABLISHED THE ELEMENTS OF HIS ADA
      CLAIM FOR VIOLATIONS RELATED TO THE LACK OF
      ACCESSIBLE PARKING, ROUTES OF TRAVEL, AND BUILDING
      INTERIOR.............................................................................14

      A.    Plaintiff is Disabled .............................................................17

      B.    Defendant Owns a Place of Public Accommodation. ....................17

      C.    The Property Has Barriers That Can Be Readily Removed...........18

            1.    Lack of Accessible Routes of Travel ..................................19

                  a.  Due to Cracked/ Damaged Pavement............................19

                  b.  Due to Obstructions.......................................................20

                  c.  Due to Excessive Slopes................................................21

            2.    Lack of Accessible Designated Disabled Parking Space and
                  Adjacent Access Aisle; and Lack of Accessible Ground
                  Space in Front of Air/Water Machine..................................22

            3.    Lack of Accessible Building Interior....................................25

PLAINTIFF'S MEMORANDUM OF POINTS & AUTHORITIES ISO MSJ

    D.    Plaintiff Encountered Violations and Is Deterred from Returning ........................................................................ 26

V.    THE LACK OF ACCESSIBLE PARKING, ROUTES OF TRAVEL, AND BUILDING INTERIOR IS UNLAWFUL UNDER CALIFORNIA'S UNRUH CIVIL RIGHTS ACT .................................................. 28

VI.    REMEDIES ......................................................................... 29

    A.    Injunctive Relief ..................................................... 29

    B.    Statutory Damages ................................................. 30

VII.    CONCLUSION .................................................................. 31

PLAINTIFF'S MEMORANDUM OF POINTS & AUTHORITIES ISO MSJ

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*Anderson v. Liberty Lobby, Inc.,*
      477 U.S. 242 (1986)..................................................................................13

*Arizona ex rel. Goddard v. Harkins Amusement Enterprises, Inc.,*
      603 F.3d 666 (9th Cir. 2010) ...................................................................15

*Celotex Corp. v. Catrett,*
      477 U.S. 317 (1986)..................................................................................13

*Chapman v. Pier 1 Imports (U.S.), Inc.,*
      631 F.3d 939 (9th Cir. 2011) ............................................................. 15, 18

*Civil Rights Educ. & Enforcement Ctr. v. Hosp. Properties Trust,*
      867 F.3d 1093 (9th Cir. 2017) .................................................................27

*Cullen v. Netflix, Inc.,*
      880 F. Supp. 2d 1017 (N.D. Cal. 2012)..................................................28

*Doran v. 7-ELEVEN, Inc.,*
      524 F.3d 1034 (9th Cir. 2008) .......................................................... 19, 27

*Fortyune v. American Multi-Cinema, Inc.,*
      364 F.3d 1075 (9th Cir. 2004) .................................................................29

*Lujan v. Defenders of Wildlife,*
      504 U.S. 555 (1992)..................................................................................27

*Moeller v. Taco Bell Corp.,*
      816 F. Supp. 2d 831 (N.D. Cal. 2011)......................................................15

*Molski v. M.J. Cable, Inc.,*
      481 F.3d 724 (9th Cir. 2007) ............................................................. 15, 29

*Rush v. Denco Enterprises, Inc.,*
      857 F. Supp. 2d 969 (C.D. Cal. 2012)....................................................18

4

PLAINTIFF'S MEMORANDUM OF POINTS & AUTHORITIES ISO MSJ

**STATUTES, RULES, AND REGULATIONS**

ADA Standards for Accessible Design (ADAS)

1991 ADAS § 3.5 ................................................................................21, 24

1991 ADAS § 4.2.1 ...................................................................................25

1991 ADAS § 4.3.2(1) ..............................................................................20

1991 ADAS § 4.3.7 ...................................................................................22

1991 ADAS § 4.3.8 ...................................................................................24

1991 ADAS § 4.5.3 ...................................................................................25

1991 ADAS § 4.6.3 ...................................................................................23

2010 ADAS § 208.2 ..................................................................................23

2010 ADAS § 302.1 ..................................................................................20

2010 ADAS § 302.2 ..................................................................................25

2010 ADAS § 303.3 ..................................................................................24

2010 ADAS § 305.2 ..................................................................................24

2010 ADAS § 403.1 ..................................................................................20

2010 ADAS § 403.2 ..................................................................................20

2010 ADAS § 403.3 ..................................................................................21

2010 ADAS § 502.4 ..................................................................................23

California Building Code (CBC)

2010 CBC § 1115B.4.1.3(3.1) ..................................................................25

5

2010 CBC § 1118B.1 ........................................................................... 25

2010 CBC § 1133B.5.1 ........................................................................ 22

2016 CBC § 11B-403.3 ................................................................... 21, 22

California Civil Code

Cal. Civ. Code § 52(a) ........................................................................ 30

Cal. Civ. Code § 55.56(a) .................................................................. 30

Cal. Civ. Code § 55.56(b) ............................................................. 30, 31

Cal. Civ. Code § 55.56(e) .................................................................. 31

Code of Federal Regulations

28 C.F.R. § 35.151(b) ........................................................................ 18

Federal Rules of Civil Procedure

FRCP 56 ............................................................................................ 13

United States Code

42 U.S.C. § 12182(a) .................................................................... 14, 16

42 U.S.C. § 12183(a)(2) ..................................................................... 16

42 U.S.C. § 12182(b)(2)(A)(iv) ......................................................... 16

42 U.S.C. § 12188(a) .................................................................... 16, 29

42 U.S.C. § 12188(a)(1) ..................................................................... 26

42 U.S.C. § 12188(a)(2) ..................................................................... 29

6

PLAINTIFF'S MEMORANDUM OF POINTS & AUTHORITIES ISO MSJ

## I.    PRELIMINARY STATEMENT

This matter involves a disabled senior citizen's multiple attempts to visit a Chevron gas station and food mart/ store ("Chevron Food Mart"), located at 3300 S. La Cienega Blvd., Los Angeles, California 90016 (the "Property"), which is not accessible to people with disabilities.

Plaintiff James Shayler ("Plaintiff") is an elderly man suffering from an acute pinched sciatic nerve causing his leg to give out sporadically, limited range of movement in his legs, and diminished use of his left arm following an injury.  On three separate occasions, he had difficulty visiting the Property simply because Defendant S & E 786 Enterprise, LLC ("Defendant") refuses to perform the routine, common remediations necessary to make the Property accessible to all in accordance with the Americans with Disabilities Act of 1990 ("ADA") (U.S.C. § 12181, *et seq.*) and the Unruh Civil Rights Act ("UCRA") (Cal. Civ. Code § 51, *et seq.*).

Plaintiff moves for summary judgment because there is no dispute that, as an individual with disabilities, he faced/faces barriers to access at Defendant's Property.  There are clear violations at the Property with respect to parking, routes of travel, and the Chevron Food Mart building interior.

Plaintiff had great difficulty disembarking from his car, and walking/ maneuvering given the obstacles in the route(s) of travel at the property.  As a

PLAINTIFF'S MEMORANDUM OF POINTS & AUTHORITIES ISO MSJ

disabled person who has trouble walking, and who needs and uses a cane or walker, Plaintiff would not be able to safely disembark from the car and walk into the Chevron Food Mart, or use the air/water machine, given the excess slopes in the parking lot, route(s) of travel, and in front of the air/water machine.  Also, Plaintiff faces a significant risk of tripping on the unsecured mats inside and outside the building entrance.  Furthermore, his walker cannot fit comfortably through the narrow aisles of the Chevron Food Mart.  Moreover, the restroom is not accessible to him because the toilet side wall grab bar is not properly placed.

Plaintiff is aware of the existing violations.  Although he wishes to return to the Property, which is conveniently located near his house, he reasonably feels that he cannot safely do so until the violations are remediated.  Thus, Plaintiff seeks an order requiring Defendant to remediate existing violations, including by leveling the parking lot, repaving the parking and route(s) of travel throughout, securing the mats inside and outside of the building, widening the aisles inside the building, and lowering the toilet side wall grab bar in the restroom.

Plaintiff also seeks statutory penalties totaling $16,000.  Pursuant to the UCRA, he seeks $4,000 per incident, for three actual visits and one deterred visit.

Plaintiff respectfully requests that the Court grant his motion and enter summary judgment in his favor.

PLAINTIFF'S MEMORANDUM OF POINTS & AUTHORITIES ISO MSJ

## II.    RELEVANT FACTS

Plaintiff is a disabled individual with severe leg and arm issues.  Declaration of James Shayler filed concurrently herewith, ("Shayler Decl.") ¶¶ 3-6; UF 1.  He has difficulty walking and standing because of his acute pinched sciatic nerve, which causes his leg to give out at times, and causes limited range of motion in his legs.  Shayler Decl. ¶ 3; UF 1.  He also has limited use of his left arm following an injury on the job and subsequent surgery.  Shayler Decl. ¶ 5; UF 1.  Plaintiff uses a cane daily to help him walk.  Shayler Decl. ¶ 4; UF 1.  When the pain is especially severe, Plaintiff uses a walker instead.  Shayler Decl. ¶ 4; UF 1.  Because his mobility is severely impaired, Plaintiff needs ADA-compliant parking, routes of travel, business interiors, and restroom facilities.  Shayler Decl. ¶ 7; UF 1.  If a surface has a slope, there is a greater likelihood that he will fall because he has difficulty balancing and navigating his walker.  *Id.*  Considering his disabilities, the State of California has issued him a permanent disabled person parking placard.  Shayler Decl. ¶ 6; UF 1.

Plaintiff visited the Property in August 2019, December 2019, and January 2020, in an effort to visit the Chevron gas station and the Chevron Food Mart.  Shayler Decl. ¶ 9; UF 4.  He had difficulty disembarking from the car, and walking/ maneuvering around given the obstacles in the route(s) of travel at the property.  Shayler Decl. ¶ 10; UF 5.  Plaintiff needs to walk on smooth pavement because he

PLAINTIFF'S MEMORANDUM OF POINTS & AUTHORITIES ISO MSJ

requires a cane or walker.  Shayler Decl. ¶ 11; UF 5.  Specifically, the pavement was not smooth in the route connecting the sidewalk to the entrance of the Chevron Food Mart building.  *Id.*  The access aisle had damaged pavement and changes in level.  *Id.*  There was also clutter in the way of the route from the access aisle to the Chevron Food Mart building entrance, making it difficult for Plaintiff to maneuver his mobility device(s).  Shayler Decl. ¶ 12; UF 5.

Plaintiff filed his Complaint on July 17, 2020, alleging violations of the ADA and the UCRA.  Declaration of Anoush Hakimi filed concurrently herewith, ("Hakimi Decl.") ¶ 2; UF 6.  In the Complaint, Plaintiff pled violations related to parking, accessible paths of travel, and signage.  Hakimi Decl. ¶ 2; UF 6; ECF Doc. 1, Complaint.  Not having been contacted by Defendant or an attorney for Defendant, Plaintiff requested a default judgment on August 31, 2020.  Hakimi Decl. ¶ 4; UF 7; ECF Doc. 12, Default by Clerk.  Plaintiff's counsel was subsequently contacted by counsel for Defendant.  Hakimi Decl. ¶ 5; UF 8.  On September 11, 2020, the parties stipulated to set aside the default judgment.  Hakimi Decl. ¶ 5; UF 8; ECF Doc. 14, Stipulation to Set Aside Entry of Default (Dkt. No. 12).

Defendant filed its Answer, wherein it admitted that it owns the Property; that there is a business establishment on the Property known as Chevron; and that the business establishment (Chevron) is open to the public.  Hakimi Decl. ¶ 6; UFs

PLAINTIFF'S MEMORANDUM OF POINTS & AUTHORITIES ISO MSJ

2-3; ECF Doc. 15, Defendant's Answer to Complaint at ¶¶ 2, 3, 10.

On September 23, 2020, the Court issued an order bifurcating the ADA claim from the UCRA claim.[1]  Hakimi Decl. ¶ 7; UF 8; ECF Doc. 18, Scheduling Notice/ In Chambers Order.  The same order set a trial date of January 19, 2021, and a pretrial conference date of January 11, 2021.  *Id.*

On October 21, 2020, Plaintiff's investigator visited the Property and identified several additional violations, including:  slopes in excess of two percent (2%) in the designated disabled parking space and adjacent access aisle; slopes in excess of five percent (5%) in the route of travel; failure to provide the minimum number of accessible designated disabled parking spaces (considering the excess slopes in the designated disabled parking space); unattached mats inside and outside of the building; restroom side wall grab bar positioned too high; and lack of clear aisles in the building.  Declaration of Marc Friedlander filed concurrently herewith, ("Friedlander Decl.") ¶¶ 3-4, 7-16; UFs 10-21.

Following the identification of the additional violations, Plaintiff moved to amend his complaint.  Hakimi Decl. ¶ 8; UF 22; ECF Doc. 20, Plaintiff's Motion for Leave to File First Amended Complaint.  The Court granted Plaintiff's motion

---

[1] Plaintiff seeks to be cautious and efficient in including/ addressing the UCRA claim in this Motion for Summary Judgment.  Plaintiff acknowledges the Court's order bifurcating the ADA and UCRA claims.  *See* ECF Doc. 18.  If the Court prefers, and so instructs, Plaintiff will file a separate Motion for Summary Judgment on the UCRA claim.

PLAINTIFF'S MEMORANDUM OF POINTS & AUTHORITIES ISO MSJ

on November 30, 2020.  Hakimi Decl. ¶ 8; UF 22; ECF Doc. 22, Order Granting

Leave to File First Amended Complaint.  Plaintiff filed the First Amended

Complaint ("FAC") on November 30, 2020.  Hakimi Decl. ¶ 8; UF 22; ECF Doc.

23, FAC.

Plaintiff is aware of the additional violations observed by his investigator,

and presently remains deterred from visiting the Property because he is aware that

access barriers still exist.  Shayler Decl. ¶¶ 14-15; UFs 23, 25.  He has significant

concerns about his ability to disembark from his vehicle, unload his walker, and

ambulate at the Property given the non-compliant slopes in the designated disabled

parking space, adjacent access aisle, and in front of the air/water machine.  Shayler

Decl. ¶ 17; UF 24.  He uses a cane or a walker, so he faces a tripping hazard given

the hole in the ground in the access aisle.  Shayler Decl. ¶ 18; UF 24.  His cane or

walker can easily catch on unsecured mats.  Shayler Decl. ¶ 19; UF 24.  He is also

concerned about the narrow aisles inside the Chevron Food Mart building, and his

ability to fit through the aisles with his walker.  Shayler Decl. ¶ 20; UF 24.  He

feels that he cannot safely use the restroom when the toilet side wall grab bar is

placed too high off the floor.  Shayler Decl. ¶ 21; UF 24.  Thus, although he would

like to return to the Property, he feels that he cannot do so until the existing

violations have been remediated, making it safe for him to visit again.  Shayler

Decl. ¶ 22; UFs 25-26.  The Property is conveniently located about ten (10) minutes

PLAINTIFF'S MEMORANDUM OF POINTS & AUTHORITIES ISO MSJ

from his house by car, and he plans and intends to visit again once the existing

barriers to access are removed.  Shayler Decl. at ¶ 13; UF 26.

There is no genuine dispute that the violations observed by Plaintiff's

investigator, and reflected in the photographs filed as exhibits in support of this

motion, exist at the Property to this day.  Friedlander Decl. ¶¶ 4-16; UFs 10-21.

Thus, Plaintiff is entitled to relief on his ADA and UCRA claims.

## III.   LEGAL STANDARD FOR SUMMARY JUDGMENT

The Federal Rules of Civil Procedure provide that "the court shall grant

summary judgment if the movant shows that there is no genuine dispute as to any

material fact and the movant is entitled to judgment as a matter of law."  Fed. Rule

Civ. Proc. (FRCP) 56.  In order to prevail on summary judgment, the moving party

need not disprove the opposing party's case.  *Celotex Corp. v. Catrett*, 477 U.S.

317, 323 (1986).

The "mere existence of *some* alleged factual dispute between the parties will

not defeat an otherwise properly supported motion for summary judgment; the

requirement is that there be no *genuine* issue of *material* fact."  *Anderson v. Liberty

Lobby, Inc.*, 477 U.S. 242, 247-248 (1986).  A disputed fact is "material" where the

resolution of that fact "might affect the outcome of the suit under the governing

law," and the dispute is "genuine" where "the evidence is such that a reasonable

jury could return a verdict for the nonmoving party."  *Id.* at 248, 250-252 (mere

PLAINTIFF'S MEMORANDUM OF POINTS & AUTHORITIES ISO MSJ

existence of a scintilla of evidence in support of the non-movant's position will be insufficient; there must be evidence on which a jury could find by a preponderance of the evidence that the non-movant is entitled to a verdict).

## IV.   PLAINTIFF HAS ESTABLISHED THE ELEMENTS OF HIS ADA CLAIM FOR VIOLATIONS RELATED TO THE LACK OF ACCESSIBLE PARKING, ROUTES OF TRAVEL, AND BUILDING INTERIOR

Under Title III of the Americans With Disabilities Act of 1990 ("ADA"), the general rule is that  "[n]o individual shall be discriminated against on the basis of a disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."  42 U.S.C. § 12182(a).

The ADA applies not just to intentional discrimination, but also to thoughtlessness and indifference:

> Its passage was premised on Congress's finding that discrimination against the disabled is most often the product, not of invidious animus, but rather of thoughtlessness and indifference, of benign neglect, and of apathetic attitudes rather than affirmative animus.  The concept of "discrimination"

under the ADA does not extend only to obviously exclusionary

conduct – such as a sign stating that persons with disabilities

are unwelcome or an obstacle course leading to a store's

entrance.  Rather, the ADA proscribes more subtle forms of

discrimination – such as difficult-to navigate restrooms and

hard-to-open doors – that interfere with disabled individuals'

"full and equal enjoyment" of places of public accommodation.

*Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 944-945 (9th Cir. 2011)

(internal quotes and citations removed for readability).

　　　To succeed on his Title III, ADA claim, "a plaintiff must show that: (1) he is

disabled within the meaning of the ADA; (2) the defendant is a private entity that

owns, leases, or operates a place of public accommodation; and (3) the plaintiff was

denied public accommodations by the defendant because of his disability."  *Arizona*

*ex rel. Goddard v. Harkins Amusement Enterprises, Inc*., 603 F.3d 666, 670 (9th

Cir. 2010), *citing Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 730 (9th Cir. 2007).

"The third element – whether plaintiffs were denied public accommodations on the

basis of disability – is met if there was a violation of applicable accessibility

standards."  *Moeller v. Taco Bell Corp.*, 816 F. Supp. 2d 831, 847 (N.D. Cal. 2011),

*citing Chapman*, 631 F.3d at 945.  This is because discrimination is defined both as

either a failure to ensure that alterations are "readily accessible to and useable by

persons with disabilities," and, where there are no alterations, "a failure to remove architectural barriers … in existing facilities … where such removal is readily achievable."  42 U.S.C. §§ 12183(a)(2); 12182(b)(2)(A)(iv).

Accordingly, the elements of a discrimination claim under this section are:

1. Plaintiff must be disabled.  42 U.S.C. § 12182(a)

2. Defendant's facility must be a place of "public accommodation," and, therefore, governed by Title III of the ADA.  *Id.*

3. Defendant must be a responsible party, i.e., an owner, operator, lessor, or lessee.  *Id.*

4. Defendant's facility must have either undergone an alteration that did not comply with the access standards, or contain an easily removable barrier that the defendant failed to remove.  42 U.S.C. §§ 12183(a)(2), 12182(b)(2)(A)(iv).

5. Plaintiff must have actually encountered this non-removed and unlawful barrier, or have reasonable grounds for believing that he is about to be subjected to discrimination as he would encounter such a barrier.  42 U.S.C. § 12188(a).

As discussed below, Plaintiff's civil rights were violated because Defendant failed to provide accessible parking, route(s) of travel, and building interior. Plaintiff discusses each element, below.

PLAINTIFF'S MEMORANDUM OF POINTS & AUTHORITIES ISO MSJ

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### A.    Plaintiff is Disabled

Plaintiff suffers from an acute pinched sciatic nerve, which causes his leg to give out at times.  Shayler Decl. ¶ 3; UF 1.  He has difficulty walking and standing, and has limited range of motion in his legs.  *Id.*  He had two knee replacement surgeries.  *Id.*  Plaintiff uses a cane daily to assist with walking, given his severe leg issues.  Shayler Decl. ¶ 4; UF 1.  When the pain is especially bad, Plaintiff uses a walker instead.  *Id.*  Sometimes, Plaintiff's leg pain is so severe that he cannot be mobile, i.e., he cannot walk around at all.  *Id.*

Plaintiff also has very limited use of his left arm as a result of an injury on the job as a firefighter years ago and the subsequent surgery.  Shayler Decl. ¶ 5; UF 1.  He also has arthritis.  *Id.*

As a result of his permanent disabilities, the State of California issued Plaintiff a permanent disabled person parking placard.  Shayler Decl. ¶ 6; UF 1.  Thus, Plaintiff is clearly disabled and entitled to the protections of the ADA.

### B.    Defendant Owns a Place of Public Accommodation

Defendant has admitted that it owns the Property, and that the Property houses a business that is open to the public.  Hakimi Decl. ¶ 6; UFs 2-3; ECF Doc. 15, Defendant's Answer to Complaint ¶¶ 2-3, 10.  Accordingly, there is no dispute as to this element.

PLAINTIFF'S MEMORANDUM OF POINTS & AUTHORITIES ISO MSJ

### C.     The Property Has Barriers That Can Be Readily Removed

There can be no genuine dispute that several barriers at the Property remain and can be easily removed.

"To determine if Plaintiff describes an 'architectural barrier' the Court must turn to the ADA Accessibility Guidelines for Buildings and Facilities ('ADAAG'). If an element does not meet or exceed ADAAG standards, it is considered a barrier to access." *Rush v. Denco Enterprises, Inc.*, 857 F. Supp. 2d 969, 973 (C.D. Cal. 2012) (internal cites omitted).  "Any element in a facility that does not meet or exceed the requirements set forth in the ADAAG is a barrier to access." *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 945 (9th Cir. 2011) (identifying this as the formal position of the Department of Justice).  These are "objective" and "precise" standards, and "the difference between compliance and noncompliance" is "often a matter of inches." *Id.*

A property that has undergone alteration since January 26, 1992, shall, to the "maximum extent feasible, be altered in such a manner that the altered portion of the facility is readily accessible to and usable by individuals with disabilities."  28 C.F.R. 35.151(b).  Upon information and belief, the Property has been altered since 1992.  ECF Doc. 23, FAC ¶ 40.

The Ninth Circuit has opined that a plaintiff may recover under the ADA for barriers personally encountered, as well as those subsequently uncovered during the

PLAINTIFF'S MEMORANDUM OF POINTS & AUTHORITIES ISO MSJ

course of discovery, so long as the barriers are relevant to the person's disability. *Doran v. 7-ELEVEN, Inc.*, 524 F.3d 1034, 1043-1044 (9th Cir. 2008).  Specifically, the Ninth Circuit held:

> … he or she may conduct discovery to determine what, if any, other barriers affecting his or her disability existed at the time he or she brought the claim.  This list of barriers would then in total constitute the factual underpinnings of a single legal inquiry, namely, the failure to remove architectural barriers in violation of the ADA ….

*Doran*, 524 F.3d at 1043-1044.  In the Complaint, Plaintiff pled that he may include additional barriers following an inspection.  Hakimi Decl. ¶ 3; UF 6.  Following an inspection, Plaintiff filed his FAC, incorporating the additional barriers discovered. Hakimi Decl. ¶ 8; UF 10, 22.  Plaintiff now seeks summary judgment in his favor, given that clear barriers to access exist in violation of the ADA, and there has not been (cannot be) any (credible) assertion or showing that the barriers cannot be readily removed.

### 1.    Lack of Accessible Routes of Travel

#### a.    Due to Cracked/ Damaged Pavement

There are no accessible routes of travel connecting the public sidewalk to the Chevron Food Mart building entrance due to poor pavement condition.  Section

19

4.3.2 of the 1991 ADA Standards for Accessible Design states:  "At least one accessible route within the boundary of the site shall be provided from … public streets or sidewalks to the accessible building entrance they serve."  1991 ADAS § 4.3.2(1).  Section 302.1 of the 2010 ADA Standards for Accessible Design provides:  "floor and ground surfaces shall be stable, firm, and slip-resistant."  2010 ADAS § 302.1.  The requirements of Section 302.1 apply to walking surfaces that are part of an accessible route.  2010 ADAS §§ 403.1, 403.2.  Therefore, at least one accessible route with stable, firm ground must connect the public streets or sidewalks to the building entrance.

Photographs taken by Plaintiff's investigator during his inspection of the Property on October 21, 2020 reveal severely cracked and damaged pavement in the route connecting the public sidewalk to the Chevron Food Mart building entrance.  P's Exh. 1; Friedlander Decl. ¶ 5; UF 11.  Defendant has not argued that it would not be feasible to repave the area in between the sidewalk and the Chevron Food Mart building entrance.  *See* ECF Doc. 15, Defendant's Answer to Complaint.

**b.    Due to Obstructions**

There are no accessible routes of travel connecting the access aisle (adjacent to the designated disabled parking space) to the Chevron Food Mart building entrance because there are obstructions in the way.  As set forth above, Defendant must provide an accessible route of travel.  *See* 1991 ADAS § 4.3.2(1).  The 1991

ADA Standards for Accessible Design defines accessible route as "a continuous

unobstructed path connecting all accessible elements and spaces of a building or

facility. … Exterior accessible routes may include parking access aisles, curb

ramps, crosswalks at vehicular ways, walks, ramps and lifts."  1991 ADAS § 3.5.

Thus, it is clear that Defendant must provide an accessible, unobstructed route from

the access aisle to the Chevron Food Mart building entrance.

However, as Plaintiff's investigator documented on October 21, 2020, the

route from the access aisle (adjacent to the designated disabled parking space) to

the Chevron Food Mart building entrance is obstructed.  P's Exh. 2; Friedlander

Decl. ¶ 6; UF 12.  There are various items obscuring the route, including crates, a

bicycle, a broom, bags, and a white pole.  *Id.*  Defendant has never argued that it

would not be feasible to remove the obstructions.  *See* ECF Doc. 15, Defendant's

Answer to Complaint.

### c.    Due to Excessive Slopes

There is no accessible route of travel from the air/water machine to the

entrance of the Chevron Food Mart building because there are excess slopes on the

pavement.  Section 403.3 of the 2010 ADA Standards for Accessible Design

provides:  "The running slope of walking surfaces shall not be steeper than 1:20

[5%].  The cross slope of walking surfaces shall not be steeper than 1:48 [2.08%]."

2010 ADAS § 403.3; *see also* 2016 California Building Code (CBC), Chapter 11B

PLAINTIFF'S MEMORANDUM OF POINTS & AUTHORITIES ISO MSJ

(7/1/18), Section 11B-403.3 (providing same).

Also, Section 4.3.7 of the 1991 Standards for Accessible Design provides: "An accessible route with a running slope greater than 1:20 [5%] is a ramp and shall comply with 4.8.  Nowhere shall the cross slope of an accessible route exceed 1:50 [2%]."  1991 ADAS § 4.3.7; *see also* 2010 CBC § 1133B.5.1.

Photographs taken by Plaintiff's investigator, during his inspection of the Property on October 21, 2020, reveal slopes exceeding 5%, including slopes as high as 6.8%, on the route of travel to the air/water machine.  P's Exh. 3; Friedlander Decl. ¶ 7; UF 13.  Defendant has not argued that it would not be feasible to correct the slope in the route of travel.  *See* ECF Doc. 15, Defendant's Answer to Complaint.

Therefore, Plaintiff respectfully requests that this Court grant summary judgment as to the existing route of travel violations (*See* Sections IV.C.1.a., IV.C.1.b., IV.C.1.c., *supra*).

> **2.      Lack of Accessible Designated Disabled Parking Space and Adjacent Access Aisle; and Lack of Accessible Ground Space in Front of Air/Water Machine**

The designated disabled parking space and adjacent access aisle at the Property have slopes in excess of 2%.  Section 4.6.3 of the 1991 ADA Standards for Accessible Design provides:  "The maximum surface slope within accessible

parking areas or adjacent access aisles cannot exceed 2% slope in any direction."

1991 ADAS § 4.6.3; 2010 ADAS § 502.4.  Photographs taken by Plaintiff's

investigator, during his inspection of the Property on October 21, 2020, reveal

slopes exceeding 2%, including slopes as high as 3.5% in the designated disabled

parking space.  P's Exh. 5; Friedlander Decl. ¶ 9; UF 15.  Additional photographs

taken on the same date by Plaintiff's investigator demonstrate that the access aisle

also has slopes exceeding 2%, including slopes as high as 6.4%.  P's Exh. 7;

Friedlander Decl. ¶ 11; UF 17.

Defendant did not provide the requisite number of accessible designated

disabled parking spaces, because none of the parking spaces on the Property are

accessible.  Section 208.2 of the 2010 ADA Standards for Accessible Design

requires property owners to install a certain number of designated disabled parking

spaces, that comply with Section 502, to be allocated based upon the total number

of parking spaces at a property.  2010 ADAS § 208.2.  In this case, none of the

parking spaces complied with Section 502, because the only designated disabled

parking space had improper slopes in violation of Section 502.4.  2010 ADAS §

502.4.  Plaintiff's investigator observed (and took photographs related to) the lack

of accessible designated disabled parking space(s) at the Property during his

October 21, 2020 visit.  P's Exhs. 5, 6; Friedlander Decl. ¶ 10; UF 16.

Additionally, ground surfaces/spaces, including the area in front of the

PLAINTIFF'S MEMORANDUM OF POINTS & AUTHORITIES ISO MSJ

air/water machine, may not have slopes exceeding 2%, or 1:48.  2010 ADAS §

305.2.  Photographs taken by Plaintiff's investigator on October 21, 2020 indicate

sloping as high as 6.8%.  P's Exh. 4; Friedlander Decl. ¶ 8; UF 14.

Furthermore, aside from the improper sloping, the access aisle contains

dangerous changes in level.  As set forth above, the access aisle is considered part

of the route of travel and, as such, must be accessible.  1991 ADAS § 3.5.  There

can be no change in level greater than one-half inch (1/2") without a proper "curb

ramp, ramp, elevator, or platform lift."  1991 ADAS § 4.3.8.  The 2010 ADA

Standards for Accessible Design prohibit changes in level exceeding one-half inch

(1/2") unless a ramp or curb ramp is provided.  2010 ADAS § 303.3.  Plaintiff's

investigator's photographs indicate that there are changes in level in the access aisle

exceeding one-half inch (1/2"), including a hole in the ground exceeding one inch

(1").  P's Exh. 8; Friedlander Decl. ¶ 12; UF 18.

Defendant has never claimed that it cannot fix the changes in level in the

access aisle, or the sloping surfaces in the designated disabled parking space, access

aisle, or in front of the air/water machine.  *See* ECF Doc. 15, Defendant's Answer

to Complaint.  Accordingly, Plaintiff respectfully requests that the Court grant him

summary judgment with respect to the various ground surface violations in the

parking lot and in front of the air/water machine.

PLAINTIFF'S MEMORANDUM OF POINTS & AUTHORITIES ISO MSJ

### 3.     Lack of Accessible Building Interior

The area in and around the Chevron Food Mart building is not compliant due to unsecured mats, inadequate floor/aisle space, and an improperly positioned grab bar in the restroom.

Carpets or mats shall be "securely attached."  1991 ADAS § 4.5.3; 2010 ADAS § 302.2.  Photographs taken by Plaintiff's investigator on October 21, 2020 demonstrate that mats inside and outside of the Chevron Food Mart building, on either side of the entrance door, are not secured.  P's Exh. 9; Friedlander Decl. ¶ 14; UF 19.  The unsecured mats can easily buckle and roll.  *Id.*

Floors inside of businesses must remain clear for individuals who require mobility assistance devices to be able to pass.  1991 ADAS § 4.2.1.  Specifically, "the minimum clear width for a single wheelchair passage shall be 32 in (815 mm) at a point and 36 in (915 mm) continuously."  *Id.*; 2010 CBC § 1118B.1.  Plaintiff's investigator documented that the interior of the Chevron Food Mart building does not have the requisite clear floor space because product displays extend into the aisle.  P's Exh. 10; Friedlander Decl. ¶ 15; UF 20.

In the restroom, grab bars must extend thirty-three inches (33") above and parallel to the floor.  2010 CBC § 1115B.4.1.3(3.1).  Photographs taken by Plaintiff's investigator, during his inspection of the Property on October 21, 2020, reveal that the grab bar on the wall next to the toilet is not thirty-three inches (33")

PLAINTIFF'S MEMORANDUM OF POINTS & AUTHORITIES ISO MSJ

above the floor; it is instead positioned at thirty-six inches (36") above the floor.
P's Exh. 16; Friedlander Decl. ¶ 11; UF 21.

Defendant has never argued that it would not be feasible to secure the mats
inside and outside of the Chevron Food Mart building entrance; to rearrange the
product displays to widen the aisles; and/or to lower the grab bar in the restroom.
*See* ECF Doc. 15, Defendant's Answer to Complaint.  Thus, Plaintiff respectfully
requests that the Court grant summary judgment with respect to the various
violations inside the Chevron Food Mart building.

**D.      Plaintiff Encountered Violations and Is Deterred from Returning**

A plaintiff is entitled to injunctive relief under the ADA if he "is being
subjected to discrimination on the basis of disability," or "has reasonable grounds
for believing [he] is about to be subjected to discrimination."  42 U.S.C. §
12188(a)(1).  Thus, ADA plaintiffs have standing to seek injunctive relief based on
barriers personally encountered, or those they reasonably believe they will
encounter.

Generally, a plaintiff must meet three requirements in order to establish
standing:  (1) the plaintiff must have "suffered an injury in fact – an invasion of a
legally protected interest which is (a) concrete and particularized, and (b) actual or
imminent, not conjectural or hypothetical"; (2) there must be a "causal connection
between the injury and the conduct complained of"; and (3) it must be "likely, as

opposed to merely speculative, that the injury will be redressed by a favorable

decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992).

In the context of civil rights statutes, such as the ADA, courts are instructed

to take a "broad view" of constitutional standing. *Doran*, 524 F.3d at 1039-40.

With regard to ADA discrimination claims, the Ninth Circuit recognizes a deterrent

effect doctrine. In connection with the requirement that the injury be actual or

imminent, "a disabled individual who is currently deterred from patronizing a

public accommodation due to a defendant's failure to comply with the ADA has

suffered 'actual injury.'" *Doran*, 524 F.3d at 1040. In other words, injury is

imminent when a plaintiff "is threatened with harm in the future because of existing

or immediately threatened non-compliance with the ADA." *Id.*

The Ninth Circuit further clarified that a plaintiff need not personally

encounter a barrier to demonstrate injury supporting standing. Instead, "[i]t is the

plaintiff's 'actual knowledge' of a barrier, rather than the source of that knowledge,

that is determinative." *Civil Rights Educ. & Enforcement Ctr. v. Hosp. Properties

Trust*, 867 F.3d 1093, 1099 (9th Cir. 2017). Indeed, "[o]nce a disabled individual

has encountered or become aware of alleged ADA violations that deter his

patronage of or otherwise interfere with his access to a place of public

accommodation, he has already suffered an injury in fact traceable to the

defendant's conduct and capable of being redressed by the courts." *Doran*, 524

PLAINTIFF'S MEMORANDUM OF POINTS & AUTHORITIES ISO MSJ

F.3d at 1042, n.5.  In other words, once a plaintiff encounters one barrier at a site, a plaintiff can sue to have all barriers related to the plaintiff's disability removed, regardless of whether the plaintiff personally encountered the barriers.  *Id.* at 1039-1040.

Plaintiff encountered barriers which caused him difficulty, discomfort, and frustration.  Shayler Decl. ¶ 10; UF 5; ECF Doc. 23, FAC ¶¶ 12-22.  Plaintiff is aware of the additional barriers observed by his investigator, including those related to route(s) of travel, ground surfaces, slopes, changes in level, parking, and the building interior, and as a result, is reasonably deterred from returning to the Property.  Shayler Decl. ¶¶ 14-21; UFs 23-25.  He hopes to return (and intends/ plans to do so) as soon as the barriers are removed, as the Property is conveniently located about ten (10) minutes from his home by car.  Shayler Decl. ¶¶ 13, 22; UF 26.

## V.   THE LACK OF ACCESSIBLE PARKING, ROUTES OF TRAVEL, AND BUILDING INTERIOR IS UNLAWFUL UNDER CALIFORNIA'S UNRUH CIVIL RIGHTS ACT

The UCRA provides that "a violation of the right of any individual under the Americans with Disabilities Act of 1990 shall also constitute a violation of this section."  Civil Code § 51(f).  "A violation of the ADA is, by statutory definition, a violation of both the Unruh Act and the DPA."  *Cullen v. Netflix, Inc.*, 880 F. Supp.

2d 1017, 1023 (N.D. Cal. 2012).  "Because the Unruh Act is coextensive with the
ADA and allows for monetary damages, litigants in federal court in California often
pair state Unruh Act claims with federal ADA claims."  *Molski*, 481 F.3d at 731.
As discussed in Section IV, *supra*, Defendant violated the ADA.  Thus, there has
been a *per se* violation of the UCRA.

## VI.   REMEDIES

There are no genuine issues remaining, and Plaintiff is entitled to injunctive
relief under the ADA, and statutory damages of $16,000 under the UCRA.

### A.   Injunctive Relief

Plaintiff seeks injunctive relief pursuant to 42 U.S.C. § 12188(a).  The
injunctive relief "shall include an order to alter facilities to make such facilities
readily accessible to and useable by individuals with disabilities" to the extent
required by the ADA.  42 U.S.C. § 12188(a)(2).

As set forth above, Plaintiff may seek recourse for barriers he personally
encountered, as well as for those he is aware of that cause him to be reasonably
deterred from visiting the public accommodation.  *See* Section IV.D., *supra*.  A
plaintiff seeking injunctive relief must also show, "a sufficient likelihood that [the
plaintiff] will again be wronged in a similar way … [t]hat is, … a real and
immediate threat of repeated injury."  *Fortyune v. American Multi-Cinema, Inc.*,
364 F.3d 1075, 1081 (9th Cir. 2004) (internal quotations omitted).

PLAINTIFF'S MEMORANDUM OF POINTS & AUTHORITIES ISO MSJ

Here, there is every indication that the Property will remain in, or return to, a non-compliant state in the future if an appropriate injunctive order is not issued against Defendant.  During this case, Defendant has failed to remove the identified barriers, the removal of which is readily achievable.  Plaintiff will not be able to access the Property without difficulty, discomfort, and frustration if Defendant is not ordered to remediate the aforementioned violations.  Shayler Decl. ¶ 10; UF 5.

Accordingly, an injunction is appropriate to ensure that Plaintiff can enjoy full access of the premises as is his right under the ADA.

### B.    Statutory Damages

Plaintiff also seeks statutory penalties totaling $16,000 under the UCRA.  In other words, he seeks $4,000 for each of the three actual visits (encounters), and one deterred visit.  *See* Shayler Decl. ¶¶ 4, 14; UFs 4, 25.

Violations of the UCRA can result in the award of statutory damages "if the violation denied the plaintiff full and equal access to the place of public accommodation on a particular occasion."  Cal. Civ. Code § 55.56(a).  A denial of full and equal access takes place where a plaintiff "personally encountered" the violation, and it resulted in "difficulty, discomfort or embarrassment."  Cal. Civ. Code § 55.56(b).  Under the Civil Code, the plaintiff may recover a statutory penalty for "each offense" (Cal. Civ. Code § 52(a)), which has been defined as "each particular occasion that the plaintiff was denied full and equal access…."

PLAINTIFF'S MEMORANDUM OF POINTS & AUTHORITIES ISO MSJ

Cal. Civ. Code § 55.56(e).  A plaintiff can recover for both actual encounters and occasions where personal knowledge of a barrier deterred the plaintiff from attempting patronage.  Cal. Civ. Code § 55.56(b).

Here, Plaintiff encountered and/or has knowledge of the multiple existing violations (*see* Sections IV.C.1., IV.C.2., IV.C.3., IV.D., *supra*), including slopes and uneven surfaces in the routes of travel; slopes in the designated disabled parking space and adjacent access aisle; changes in level in the access aisle; obstructions in the route from the access aisle to the building entrance; unsecured mats at the building entrance; narrow aisles inside the building; and an inaccessible restroom inside the building.  Shayler Decl. ¶¶ 10-12, 14-22; UFs 5, 23. Accordingly, Plaintiff is deterred from visiting the Property until the existing violations are remediated.

## VII.  CONCLUSION

For all the foregoing reasons, Plaintiff respectfully requests that this Court grant his motion, issue injunctive relief, and award judgment in favor of Plaintiff and against Defendant in the amount of $16,000.

Dated:  December 1, 2020          THE LAW OFFICE OF HAKIMI & SHAHRIARI


By:     /s/ Anoush Hakimi
_____
ANOUSH HAKIMI, ESQ.
Attorney for Plaintiff James Shayler

PLAINTIFF'S MEMORANDUM OF POINTS & AUTHORITIES ISO MSJ